**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0395n.06
Filed: July 1, 2008

**No. 07-1564**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| KARLA M. SMITH, ) | |
| ) | |
| Defendant-Appellant, ) | |
| ) | |
| v. ) | ON APPEAL FROM THE UNITED |
| ) | STATES DISTRICT COURT FOR THE |
| UNITED STATES OF AMERICA ) | EASTERN DISTRICT OF MICHIGAN |
| ) | |
| Plaintiff-Appellee. ) | |
| ) | |
| ) | |

Before: GUY, SUHRHEINRICH, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Karla M. Smith appeals her convictions for being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g)(1); possession of a controlled substance with intent to distribute pursuant to 21 U.S.C. § 841(a); and possession of a firearm in furtherance of a drug-trafficking crime pursuant to 18 U.S.C. § 924(c). Smith contends that the district court erred in (1) denying her motion for a new trial; (2) finding that her inculpatory statement to Sergeant Spencer was not discoverable under Federal Rule of Criminal Procedure 16(a); (3) providing the jury with misleading jury instructions; and (4) denying her motion for a judgment notwithstanding the verdict pursuant to Federal Rule of Criminal Procedure 29. For the following reasons, we affirm the decisions of the district court.

I.

-1-

On December 10, 2003, a Detroit Police Narcotics Enforcement Unit executed a search warrant at 13626 Minock Street (the "residence") in the City of Detroit. During the trial, four officers – David Salazar, Darick Bradford, Michael Carson, and Tyrone Spencer – testified to the events occurring during the raid on the residence.

Initially, the officers stood on the porch of the residence while the senior officer, Tyrone Spencer, announced the presence and purpose of the police officers. David Salazar testified that while the presence and purpose was being announced, he was in front of the other members of his raid crew on the porch of the residence. At that time, he "observed through the window Defendant jump up from a couch in the front room and run towards the rear of the location." Salazar stated that he informed his fellow officers that Smith was running. Upon hearing that Smith was running, the other officers forcibly opened the front door.

Salazar testified that after entering the residence, he found Smith in the bathroom, which was located about twenty to thirty feet from the front door. Salazar also testified that he brought Smith to the "front room" of the residence, handing her off to his fellow officers. According to Salazar's testimony, he then continued to secure the premises. In doing this, he found an older female, whose name was later determined to be Valerie Davis, in the first bedroom dressed in a nightgown lying in bed. Salazar recalls the woman stating that she was "sick and had the flu or something like that."

Bradford testified that upon entering the residence he saw a table in front of the couch from which Smith had run; on the table was "suspected cocaine . . . wrapped into ziplocs." As Bradford explained, this method of wrapping indicated that the cocaine was being prepared for distribution.

Carson testified that he discovered a .357 Magnum revolver with five live rounds on the couch underneath a shirt. Carson also testified that he informed Spencer of the weapon.

At trial, Spencer testified that he found $309 in Smith's pants pocket, comprised of eight twenty-dollar bills, eight ten-dollar bills, eleven five-dollar bills, and fourteen one-dollar bills. In addition, Spencer testified that while he remained in the front room, Smith, in response to seeing the recovery of the gun, stated that the "gun was there because she had gotten robbed a couple of days ago at the house" and that the gun had been provided by her "supplier." Under cross-examination, Spencer conceded that he had not included this fact in the Preliminary Complaint Report. None of the other officers testified that they heard Smith make this statement.

During the course of the trial, Smith contested the admissibility of this statement. While the government argued that the statement constituted an excited utterance, Smith argued that the statement was made in response to interrogation. Prior to Spencer's testimony, Smith's counsel argued the following at a side-bar conference: "If you look at the nature of the statement, that is not an excited utterance that oh, the seller bought this gun three days ago. This is a conversation she is having with these officers. This is not an excited utterance. . . . This is interrogation no matter how the government couches it."

On related grounds, Smith also argued that the government should have disclosed this statement during the course of discovery because the statement was made during an interrogation and was therefore discoverable under Federal Rule of Criminal Procedure 16(a). As Smith's counsel explained: "[I]t's . . . our position that . . . the statement was inculpatory. It did go – it was made in response to – it was made to a government agent and I believe that the nature – that the statement itself was elicited in direct response to governmental questioning." When the court asked if there was any evidence that the statement was made in response to questioning, Smith's counsel answered as follows:

I believe the nature of the statement itself, Your Honor, suggests that it was made in response to a question. I don't believe that Officer Spencer indicated that Miss Smith merely blurted out that – merely blurted out this statement. Apparently he was sitting down with her at the time the statement was made. We would have to logically assume he was sitting down with her having a conversation with her and this was in response to his questions.

However, the district court concluded that because there was no evidence of questioning, the statement was properly admitted as an excited utterance and was not discoverable under Rule 16(a).

The jury found Smith guilty on all three counts: felon in possession of a firearm; possession with intent to distribute a controlled substance; and possession of a firearm in furtherance of a drug trafficking crime.

After the verdict, Smith moved for a judgment in favor of the defendant notwithstanding the verdict, or, in the alternative, a new trial with a request for an evidentiary hearing. This motion was premised on a number of alleged errors at trial, which included, *inter alia*: (1) that the government improperly mentioned Smith's aliases during its opening statement, and (2) that the statement made by Smith regarding the discovered weapon should have been disclosed to the defense earlier. The district court denied this motion but noted that this conclusion was not based upon Spencer's testimony. In fact, the district court found Spencer's testimony regarding Smith's alleged statement with respect to her having received the discovered weapon from her supplier "incredible."

Smith now appeals the various determinations of the district court.

## II.

"Rule 33 of the Federal Rules of Criminal Procedure permits a district court, upon a defendant's motion, to 'vacate any judgment and grant a new trial if the interest of justice so requires.'" *United States v. Wheaton*, 517 F.3d 350, 360-61 (6th Cir. 2008) (quoting Fed. R. Crim.

Pro. 33). "A motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007). "A district judge, in considering the weight of the evidence for purposes of adjudicating a motion for new trial, may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." *Id.* at 593. This court reviews a trial court's ruling regarding a motion for Rule 33 for "clear and manifest abuse of discretion." *Id.*

Smith contends that the district court did in fact abuse its discretion by not granting her motion for a new trial pursuant to Rule 33. In support of this claim, Smith notes that the district court admitted the testimony of Spencer – testimony that the district court itself found "incredible." In addition, Smith notes that the government mentioned her aliases during its opening statement and that the district court concluded that such mention was improper. Accordingly, Smith argues that under these circumstances, the district court's denial of her motion for a new trial constituted an abuse of its discretion.

Smith is correct that "[o]nly when proof of an alias is relevant to identifying the defendant should a court allow its inclusion in the indictment and its subsequent introduction at trial." *United States v. Wilkerson*, 456 F.2d 57, 59 (6th Cir. 1972). Thus, this court has generally disapproved of the introduction of aliases by the prosecution when the "principal use to which the aliases were put was to indicate to the jury that people who use aliases are inherently suspect." *Id.*; *see also United States v. Williams*, 158 F. App'x 651, 654-55 (6th Cir. 2005); *United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001). Indeed, in the instant case, there appears to have been no such reason to have introduced the aliases of Smith as they were not necessary to identify the defendant.

However, despite the inclusion of aliases and the "incredible" testimony of Spencer, the district court found that the government presented "significant and substantial evidence" at trial and therefore it could not "conclude that a new trial would be in the interest of justice." Given the testimony regarding Smith's proximity to both the weapon in question and the cocaine, the absence of any other healthy individual in the house, and the currency found on Smith's person when she was arrested, the district court's conclusion that a new trial would not be in the interest of justice cannot be said to have been a clear and manifest abuse of discretion.

III.

We next consider Smith's claim that Smith's alleged statement regarding her receipt of the weapon from her supplier should have been disclosed prior to trial.

According to Federal Rule of Criminal Procedure 16(a)(1)(A), "[u]pon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." Thus, statements not made in response to an interrogation do not fall within the requirements of Rule 16(a). *See United States v. Godinez*, 114 F.3d 583, 589 (6th Cir. 1997) ("It is clear that a literal reading of the Rule [*i.e.*, Rule 16(a)] does not require the government to provide statements made by the defendant that were not made in response to an interrogation."); *see also United States v. Green*, 548 F.2d 1261, 1267 (6th Cir. 1977) ("For purposes of application of the pre-trial discovery provisions of the Federal Rules of Criminal Procedure, he would have us equate his own spontaneous, unsolicited admissions, made within hearing of an undercover police officer, to a defendant's responses to direct questions posed by a government agent during a criminal investigation."). This issue therefore hinges on

whether Smith's alleged statement was made in response to interrogation.

Although the government claims otherwise, a number of courts, including our own, appear to have imported the standard for determining whether a statement was made in response to an interrogation from *Rhode Island v. Innis*, 446 U.S. 291 (1980), although doing so in unpublished opinions. In *Innis*, the Supreme Court stated as follows:

> A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

*Innis*, 446 U.S. at 301-02 (footnotes omitted and emphasis in original). A number of other circuits have applied the *Innis* standard for an interrogation to the Rule 16(a) context. *See, e.g.*, *United States v. Rodrigues*, No. 95-10497, 1996 U.S. App. LEXIS 30267, at *9-10 (9th Cir. Nov. 19, 1996) (concluding that Rule 16(a) did not impose any duty to disclose the relevant evidence and then citing *Innis* for the definition of 'interrogation'); *United States v. Otero*, No. 90-1839, 1990 U.S. App. LEXIS 18420, at *3-4 (7th Cir. 1990) (concluding that the statements in question were not made in response to an interrogation because they were not given under circumstances reasonably likely to elicit an incriminating response); *cf. United States v. Huzzey*, No. 97-4607, 1998 U.S. App. LEXIS 14835, at *2-3 (4th Cir. June 30, 1998) (per curiam) ("Rule 16 only requires the Government to disclose defendants' statements made in response to interrogation, and it is well settled that routine booking questions, such as asking a defendant's name, which are not intended to elicit incriminating responses do not amount to interrogation."). Indeed, a Sixth Circuit panel also appears to have applied *Innis* in the Rule 16(a) context, concluding, after an introductory discussion of the *Innis*

standard, that "[b]ecause we have concluded that the agent's statements *were not the functional equivalent of interrogation*, we agree that Rule 16 is inapplicable here." *United States v. Ronayne*, Nos. 94-1374; 94-1378, 1995 U.S. App. LEXIS 10085, at *22-23 (6th Cir. 1995) (emphasis added).

Applying the *Innis* standard, we find that Smith's alleged statement was not made in response to the functional equivalent of an interrogation. According to Spencer, Smith's statement was made in response to the mere discovery of the weapon. In fact, according to the testimony at trial, Smith's statement was not made in response to any questioning whatsoever. Thus, the conditions under which Smith allegedly made her statement were far from those "the police should know are reasonably likely to elicit an incriminating response," but instead were simply those "normally attendant to arrest and custody." *See Innis*, 446 U.S. at 301.

IV.

As part of the jury instructions, the district court, employing the Sixth Circuit Pattern Criminal Jury Instruction § 2.01(3), informed the jury to

> Also keep in mind that whether anyone else should be prosecuted and convicted for this crime is not a proper matter for you to consider. The possible guilt of others is no defense to a criminal charge. Your job is to decide if the government has proven this defendant guilty. Don't let the possible guilt of others influence your decision in any way.

Smith contends that this instruction confused the jurors, leading them "to believe that they were to disregard the evidence concerning Valerie Davis."

This court reviews "a district court's choice of jury instructions according to an abuse discretion standard." *United States v. Beaty*, 245 F.3d 617, 621 (6th Cir. 2001). Moreover, "[a] trial court has broad discretion in drafting jury instructions and does not abuse its discretion unless the jury charge 'fails accurately to reflect the law.'" *Id*. (quoting *United States v. Layne*, 192 F.3d 556,

574 (6th Cir. 1999)).  As this court had noted, "We will reverse a judgment based upon an improper jury instruction 'only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial.'" *Id*. (quoting *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999)).  Put differently, "we will reverse a conviction only where the instructions fail to state the law correctly, or where the instructions are confusing, misleading, or prejudicial." *United States v. Ballentine*, No. 98-6035, 1999 U.S. App. LEXIS 30164, at *17-18 (6th Cir. Nov. 17, 1999) (citing *United States v. Milligan*, 17 F.3d 177, 182 (6th Cir. 1994)).

In *Ballentine*, a panel of this court addressed the application of an identical jury instruction in a case involving both possession of controlled substances and possession of firearms.  1999 U.S. App. LEXIS 30164, at *18.  Finding the instruction sufficiently clear despite the defendant's theory of the case, the court noted that

> [t]he issue to which the district court's instruction speaks is reasonably clear: possession of controlled substances and possession of firearms are not offenses which logically require only a single perpetrator, and [the defendant's girlfriend's] guilt neither logically entails nor even probabilistically indicates Ballentine's innocence. Indeed, ownership and possession are not identical concepts . . . .

*Id*. at *18.  This same reasoning also applies in our own case, as Valerie Davis's guilt or innocence is irrelevant to Smith's own guilt or innocence for the possession of a firearm and possession of a controlled substance.[1]

---

[1]Like the appellant in *Ballentine*, Smith points to the Committee Commentary for the "guilt of others" jury instruction, which states that this "may require modification in cases where the defendant has raised an alibi defense, or has argued mistaken identification. Where the defendant claims that someone else committed the crime, it may be confusing to instruct the jurors that they should not be concerned with anyone else's guilt."  Sixth Circuit Pattern Criminal Jury Instruction § 2.01(3), Committee Commentary.  Smith believes her own case is one such case and therefore argues that the jury instruction was confusing and misled the jury.  However, despite this contention, this court concluded in *Ballentine* that the "guilt of others" jury instruction was sufficiently clear in a case where the defendant claimed that someone else was guilty of possession of both firearms and

-9-

V.

Lastly, Smith challenges all three of her convictions as not being supported by sufficient evidence.

"The relevant inquiry when reviewing claims of insufficient evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Substantial evidence means "more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007) (quoting *United States v. Martin*, 375 F.2d 956, 957 (6th Cir. 1967)).

"Because the issue is one of legal sufficiency, the court neither 'independently weighs the evidence, nor judges the credibility of witnesses who testified at trial.'" *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007) (quoting *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999)). When considering the sufficiency of the evidence, "we do not . . . substitute our judgment for that of the jury." *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994). Instead, we "must view all evidence and resolve all reasonable inferences in favor of the government." *Hughes*, 505 F.3d at 592. In addition, "it must be remembered that 'circumstantial evidence alone can sustain a guilty verdict and . . . [such] evidence need *not* remove every reasonable hypothesis except that of guilt.'" *Id*. (emphasis in original) (quoting *United States v. Stone*, 748 F.2d 361, 362 (6th Cir.

a controlled substance. Such logic applies equally to our own case.

-10-

1984)).

An initial application of this standard renders the district court's finding Spencer's testimony incredible irrelevant for the purposes of a sufficiency of the evidence inquiry. Because "determining the credibility of witnesses is a task for the jury, not this court . . . [and] all reasonable inferences are to be drawn in the government's favor," *United States v. Beverly*, 369 F.3d 516, 532 (6th Cir. 2004), this court must assume Spencer's testimony to be credible when evaluating whether there was sufficient evidence to find Smith guilty beyond a reasonable doubt.

### a. Felon in Possession of a Firearm

Pursuant to 18 U.S.C. § 922(g)(1), "[i]n order to sustain a conviction for felon in possession of a firearm, the government must prove: (1) that the defendant had a prior felony conviction; (2) that the defendant knowingly possessed the firearm, either actually or constructively; and (3) that the firearm had traveled in interstate commerce." *United States v. Coffee*, 434 F.3d 887, 895 (6th Cir. 2006).

An individual is said to have constructive possession "when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Id*. (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)). Moreover, "[c]onstructive possession may be proved by direct or circumstantial evidence and it is not necessary that such evidence remove every reasonable hypothesis except that of guilt." *Id*. at 895-96. In fact, "[p]roof that 'the person has dominion over the premises where the firearm is located' is sufficient to establish constructive possession." *Id.* at 896 (quoting *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998)).

The parties both stipulated to the facts that Smith had a prior felony conviction and that the

weapon in question – the Ruger .357 Magnum – had traveled in interstate commerce.  Thus, all that remained for the government to prove at trial was constructive possession.  Even without Spencer's testimony, the testimony at trial – that Smith had been seated near the weapon, that Smith had fled when the police announced their presence, and the absence of any other healthy individual on the premises – would seemingly be sufficient circumstantial evidence of constructive possession.  Moreover, Spencer's testimony that Smith admitted being in possession of the weapon leaves no doubt that the jury's guilty verdict for being a felon in possession of a firearm was supported by sufficient evidence.

### b.  Possession with intent to distribute

"The elements of a charge of possession with intent to distribute illegal drugs are: (1) the defendant knowingly, (2) possessed a controlled substance, (3) with intent to distribute." *Coffee*, 434 F.3d at 897.  Constructive possession is sufficient to satisfy the possession element of a 21 U.S.C. § 841(a) charge.  *United States v. Draper*, 888 F.2d 1100, 1103 (6th Cir. 1989); *see also United States v. Collier*, 246 F. App'x 321, 329 (6th Cir. 2007) (citing *Draper* for the same proposition).

At the residence, police found cocaine[2] that was "wrapped into ziplocs."  As Bradford explained, this method of wrapping indicates that the cocaine was being prepared for distribution.  Other evidence included Smith's proximity to the controlled substance, her flight from the police, and the lack of another healthy adult on the premises.  The evidence was sufficient to support the jury's guilty verdict.  Moreover, Smith's reference to her supplier in her statement to Spencer further

---

[2]The parties stipulated to the fact that the substance obtained at the residence was in fact a controlled substance.

bolsters the jury's finding Smith guilty of possession of a controlled substance with intent to distribute.

c. Possession of a firearm in furtherance of a drug trafficking crime

"Section 924(c) provides in relevant part: 'any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime – (i) be sentenced to a term of imprisonment of not less than 5 years.'" *United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001) (quoting 18 U.S.C. § 924(c)). Having already determined that there was sufficient evidence to support the jury's guilty verdict against Smith for possession with intent to distribute, the remaining inquiry is whether Smith "use[d] or carrie[d] a firearm . . . in furtherance of any such [drug trafficking] crime."

In *Mackey*, this court outlined the meaning of 18 U.S.C. § 924(c). According to the court's conclusion in *Mackey*,

> In light of Congress' intent that "in furtherance of" be a more stringent requirement than "during and in relation to," we emphasize that the possession of a firearm on the same premises as a drug transaction would not, without a showing of a connection between the two, sustain a § 924(c) conviction. In order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use.

*Mackey*, 265 F.3d at 462. In addition, "[o]ther factors that may be relevant to a determination of whether the weapon was possessed in furtherance of the crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Id*.

The *Mackey* court then applied its definition of "in furtherance of," taking into account the

-13-

various factors outlined above:

> In the instant case, there was an illegally possessed, loaded, short-barreled shotgun in the living room of the crack house, easily accessible to the defendant and located near the scales and razor blades. Defendant, stopped by police near the gun, possessed cocaine and a large sum of cash. From the evidence presented, a reasonable jury could infer that the purpose of the firearm was to provide defense or deterrence in furtherance of the drug trafficking for which defendant was arrested.

*Id*. at 462-63. Nearly all the factors present in *Mackey* are also present in our own case. The weapon in question was found in close proximity to the controlled substances; there were five live rounds in the weapon; Smith was seen fleeing from the location of the controlled substances and the weapon (a location that made the weapon easily accessible during the process of dividing the controlled substance into ziploc bags); and a significant amount of small bills were found on her person. In addition, Smith's statement to Spencer evidences a link between Smith's activities and the weapon: the weapon was necessary to protect Smith from being robbed while, apparently, in the process of distributing controlled substances. Therefore, the jury's guilty verdict for possession of a firearm in furtherance of a drug trafficking crime is supported by sufficient evidence.

## VI.

For the foregoing reasons, we affirm the district court's decisions.