**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0332n.06
Filed: May 15, 2009

**Nos. 07-1652, 07-1711**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| ANDRE MANJATE and JEROME LEWIS, | ) | |
| | ) | M E M O R A N D U M |
| Defendants-Appellants. | ) | O P I N I O N |

BEFORE:    MOORE and McKEAGUE, Circuit Judges; and FORESTER, District Judge.*

**McKEAGUE, Circuit Judge.**  Defendants Andre Manjate and Jerome Lewis were charged in a twenty-count indictment in the Western District of Michigan with drug trafficking conspiracy and related offenses. They were tried jointly on nineteen of the twenty counts in a seven-day jury trial in December 2006. The jury found defendants guilty as charged, with one exception. Defendant Lewis was found not guilty of distribution of heroin resulting in serious bodily injury. Both defendants were sentenced on March 22, 2007. Defendant Lewis was sentenced to prison for 420 months, the statutory mandatory minimum sentence for the crimes he was convicted of. Defendant Manjate was sentenced to 224 months in prison, a sentence within the applicable advisory

_____

*Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Guidelines range. Both defendants challenge the lawfulness of their convictions and sentences on several grounds, all of which we find to be meritless. We therefore affirm.

**I. Suppression Motion (Lewis)**

The first claim of error relates to a pretrial suppression motion filed by defendant Lewis in relation to evidence seized by the police in a traffic stop on February 17, 2005. After an evidentiary hearing, the district court denied the motion in a twenty-page opinion. The court held the scope of the temporary detention following the traffic stop was not unreasonably extended in awaiting the arrival of a drug detection canine unit because the officer had reasonable suspicion that criminal activity was afoot and the delay was minimal. Lewis insists the facts known to City of Wyoming Police Sergeant John McCaw did not amount to reasonable suspicion and that he was subject to an unreasonable seizure based on a mere hunch. Lewis does not dispute McCaw's testimony that he validly pulled-over the Plymouth Breeze Lewis was driving based on an observed traffic violation. He contends, however, that after the purpose of the traffic stop had been completed, he should have been released.

We review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). Once the purpose of a traffic stop is completed, an officer may not further detain the vehicle or its occupants unless he has made observations which, under the totality of the circumstances known to the officer, give rise to reasonable and articulable suspicion that criminal activity is afoot. *United States v. Perez*, 440 F.3d 363, 370 (6th Cir. 2006). While reasonable suspicion must be based on more than an "ill-defined hunch," an officer may draw on his own experience and specialized training to draw inferences and

deductions from the cumulative information available that might well elude an untrained person.

*Id.* at 371. Any continued detention must be temporary and the investigative means used should be

the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short

period of time. *Perez*, 440 F.3d at 372.

The district court identified the following circumstances as legitimately contributing to

Sergeant McCaw's formation of reasonable suspicion:

> First, Sergeant McCaw observed Lewis' vehicle at a known drug house at an unusual time of the morning [4:20 a.m.], parked toward the rear of the driveway with its lights on, and the vehicle left a short time later. . . .

> Second, during the stop, Lewis gave information to Sergeant McCaw regarding his destination that was inconsistent with common sense. . . .

> Third, Lewis stated during the stop that he was visiting his friend, Paula. While this information alone would not suggest criminal activity, given Sergeant McCaw's prior knowledge that Paula Nice lived at and sold drugs from the residence, it served to strengthen the suspicion that Lewis had engaged in a drug transaction and that Paula Nice was still engaged in the sale of drugs.

> Fourth, Sergeant McCaw observed an 'old-fashioned' hard-sided briefcase in the back seat of Lewis' vehicle. Sergeant McCaw testified that the briefcase had locks on it and that he found it odd that a younger person such as Lewis [24 years old] would be carrying an older-style briefcase. . . .

> Finally, Sergeant McCaw noticed that throughout the traffic stop, Lewis was very short with his answers and avoided eye contact, indicating that he was nervous. . . .

Opinion Dec. 27, 2005, pp. 9-12, JA 150-53.

Considering that McCaw had received substantial specialized training in narcotics trafficking

and had several years' experience in narcotics investigations, we concur in the district court's

determination that these known facts, viewed under the totality of the circumstances, were sufficient

to justify the inference drawn by McCaw that Lewis may have been involved in drug trafficking.

Lewis argues that McCaw's information regarding drug trafficking at the residence was stale

(i.e., over six months old) and that every other listed circumstance could have an innocent

explanation. Circumstances comprising a particularized and objective basis for reasonable suspicion

need not be uncommon or especially unique. *United States v. McCauley*, 548 F.3d 440, 444 (6th Cir.

2008). Although each particular act in a series of acts may be innocent in itself, taken together, they

may substantiate suspicion of wrongdoing warranting further investigation. *United States v. Marxen*,

410 F.3d 326, 329 (6th Cir. 2005). Lewis's argument is based on an improper parsing of the

information available to McCaw. *See United States v. Orsolini*, 300 F.3d 724, 728 (6th Cir. 2002)

(district court held to have erred by analyzing suspicious circumstances individually rather than in

their totality). We therefore reject it.[1]

Considering the totality of the circumstances, and giving due deference to the fact findings

of the district court, which conducted the hearing and observed the testimony of the witnesses, *see*

*Branch*, 537 F.3d at 587 (acknowledging that district court has institutional advantage in addressing

reasonable suspicion inquiry), we find no error in the determination that Sergeant McCaw had

---

[1]Moreover, as the district court noted, the degree of intrusion entailed in waiting for the canine unit to arrive was minimal, five to ten minutes. To the extent Lewis argues the traffic stop was excessively intrusive in that he was forcibly removed from the vehicle and placed under arrest, this argument, too, is unavailing. It is well-established that an officer is justified as a matter of course in ordering the driver of a lawfully stopped car to exit the vehicle. *United States v. Montgomery*, 377 F.3d 582, 585-86 (6th Cir. 2004). It is undisputed that Lewis was removed from the car and arrested only after and because he repeatedly refused to comply with McCaw's lawful order to exit the car.

reasonable suspicion justifying a brief investigative detention. Accordingly, defendant Lewis's

motion to suppress was properly denied.[2]

## II. Possession of Firearm in Furtherance of Drug Trafficking (Lewis)

Under Count 13 of the indictment, defendant Lewis was found guilty of possessing a firearm

in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A) and §

924(c)(1)(C)(1). The verdict was based on the seizure of a handgun during execution of a search

warrant at Lewis's residence on March 22, 2005. Lewis admits that he was involved in drug

trafficking and admits that he possessed the handgun found in the bedroom closet of his apartment.

Yet, he contends the government presented no evidence to support a finding that he possessed the

gun in furtherance of drug trafficking. Lewis argues that the district court erred when it denied his

Rule 29 motion for judgment of acquittal at the close of the government's case-in-chief.

We review the denial of a Rule 29 motion de novo. We must affirm the denial, however, "if

the evidence, viewed in the light most favorable to the government, would allow a rational trier of

fact to find the defendant guilty beyond a reasonable doubt." *United States v. McGee*, 529 F.3d 691,

---

[2]Lewis also argues perfunctorily that the manner in which the dog-sniff and ensuing search of his vehicle were conducted was unreasonable. These arguments are not properly before us because they were not raised in the district court, *see United States v. Ellison*, 462 F.3d 557, 560 (6th Cir. 2006), and because the arguments are not developed but are mentioned only in a perfunctory manner, *see United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006). We therefore give them no consideration.

We note that the Supreme Court recently clarified the circumstances under which officers may conduct a warrantless search of a vehicle incident to a lawful arrest. *Arizona v. Gant*, — S.Ct. —, 2009 WL 1045962 at *11 (April 21, 2009). *Gant* has no bearing on this case, as the warrantless search of Lewis's vehicle and its contents was, irrespective of Lewis's arrest, justified by probable cause after the drug detection dog alerted positively for narcotics. *See Perez*, 440 F.3d at 374-75.

696 (6th Cir. 2008) (quoting *United States v. Solorio*, 337 F.3d 580, 588 (6th Cir. 2003)).

Circumstantial evidence may be sufficient to sustain a guilty verdict, and the evidence need not

exclude every reasonable hypothesis except guilt to be sufficient. *United States v. Reed*, 167 F.3d

984, 992 (6th Cir. 1999).[3]

In denying the motion, the district court noted that the handgun was found in Lewis's

bedroom closet in reasonably close proximity to a significant amount of cash and drugs, i.e., within

a few feet. The court further noted that, even though the gun was unloaded, ammunition was kept

nearby with the drugs in the bedroom dresser. The district judge recognized it as the kind of weapon,

a .38 caliber pistol, commonly used by drug traffickers. This evidence was sufficient, the court

concluded, to permit a reasonable inference by the jury that Lewis possessed the gun in furtherance

of his admitted drug trafficking activities. We agree.

A firearm is possessed in "furtherance of" a drug trafficking offense if there is a nexus

between the firearm and the crime; if it advances, promotes, or facilitates the crime. *United States

v. Paige*, 470 F.3d 603, 609 (6th Cir. 2006). The standards under which we evaluate the sufficiency

of the evidence are summarized as follows:

> [T]he possession of a firearm on the same premises as a drug transaction
> would not, without a showing of a connection between the two, sustain a § 924(c)
> conviction. In order for the possession to be in furtherance of a drug crime, the
> firearm must be strategically located so that it is quickly and easily available for use.

---

[3]Lewis purports to specifically challenge the district court's denial of his Rule 29 motion at
the close of the government's case-in-chief, rather than its denial of the same motion at the close of
all the proofs. Yet, because he introduced evidence at trial, he is deemed to have waived this specific
objection and, on review, we must evaluate the sufficiency of the evidence based on the record as
a whole. *United States v. Wagner*, 382 F.3d 598, 611 n.2 (6th Cir. 2004).

> Other factors that may be relevant to a determination of whether the weapon was possessed in furtherance of the crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found.

*United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001) (citations omitted). The *Mackey* court noted that these other factors may help "to distinguish possession in furtherance of a crime from innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard." *Id.* Although mere possession of a firearm in the same premises where drug trafficking takes place is insufficient, "a jury can reasonably infer that firearms which are strategically located so as to 'provide defense or deterrence in furtherance of the drug trafficking' are used in furtherance of a drug trafficking crime." *United States v. Swafford*, 385 F.3d 1026, 1028-29 (6th Cir. 2004) (quoting *United States v. Couch*, 367 F.3d 557, 561 (6th Cir. 2004)).

Applying these standards, we conclude, on viewing the evidence in the light most favorable to the government, that a rational jury, properly instructed in accordance with the *Mackey* standards summarized above (as this jury was), could reasonably infer that Lewis possessed the handgun found in his bedroom closet in defense of his admitted drug trafficking activities. It was located in close proximity to drugs and cash and ammunition, so as to be quickly and easily accessed for use. It was not a collector's piece prominently displayed, nor a hunting weapon stored under lock and key. Moreover, it was the same type of weapon Lewis was found to have possessed along with drugs in the Plymouth Breeze one month earlier.

The facts that the gun was not loaded and that it was not unlawful for Lewis to possess it weigh against a finding that Lewis possessed it in furtherance of drug trafficking. Lewis testified

that he had never fired a gun, did not like to have a loaded firearm in his home, and did not use the .38 caliber handgun in furtherance of his admitted drug trafficking. He explained that he had loaned money to a man from New York whom he did not know, "Derrick," to invest in internet gambling, and he "guessed" that Derrick had given him the handgun to hold as collateral for the loan. The jury had the opportunity to hear Lewis's explanation and assess his credibility. The jury also heard Lewis admit that he owned the briefcase that was found to contain drugs and a .38 caliber pistol one month earlier. The jury also heard Lewis's responses to questions on cross-examination as to whether it was pure coincidence that the two handguns he possessed were similar and that the ammunition found in his dresser drawer happened to fit both weapons.

In sum, considering the record as a whole in the light most favorable to the government, we cannot hold that the evidence presented was not reasonably sufficient to sustain the jury's verdict. The instant evidence is analogous to that found to be sufficient in other recent Sixth Circuit rulings. *See e.g., Swafford*, 385 F.3d at 1029; *Mackey*, 265 F.3d at 462; *Smith v. United States*, 285 F. App'x 209, 217 (6th Cir. 2008) (unpublished).

### III. Variance Between Indictment and Evidence (Manjate)

Defendant Manjate was convicted under Count 1 of participating in a heroin trafficking conspiracy "beginning about September, 2004 and continuing to on or about December 20, 2005." Under Count 2, he was convicted of participating in a cocaine trafficking conspiracy "beginning about in or before the Spring of 2004 and continuing to on or about March 22, 2005." He challenges both convictions, contending the government presented evidence of drug trafficking activities that

predated both charged conspiracies, creating the possibility that the jury convicted him based on uncharged conduct, in violation of his Sixth Amendment right to be informed of the charges against him.

Manjate acknowledges that, because he is raising this issue for the first time on appeal, it is reviewed only for plain error. He must therefore show that "(1) an error occurred; (2) the error was obvious or clear; (3) the error affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Mayberry*, 540 F.3d 506, 512 (6th Cir. 2008) (quoting *United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004)).

To obtain a reversal of a conviction based on a variance between the indictment and evidence so serious as to be considered a constructive amendment of the indictment, Manjate must show both a variance and that his substantial rights were affected. *United States v. Budd* , 496 F.3d 517, 521-22 (6th Cir. 2007). To satisfy this second requirement, Manjate must demonstrate "that the important functions of the indictment were undermined by both the evidence presented and the jury instructions." *Id.* at 522 (quoting *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006)). This requirement reflects the rule that "once the indictment presents a factual basis for an element of a crime, the prosecution may not rest its proof of that element of the crime at trial on other facts." *Id.* (quoting *United States v. Caldwell*, 176 F.3d 898, 902 (6th Cir. 1999)).

Whereas Manjate objects to testimony of drug trafficking activities attributed to him that predated the December 2006 trial by some two years, most of these activities actually fell well within the periods of the two charged conspiracies, allegedly occurring from September 2004 to December

2005, and Spring 2004 to March 2005. Moreover, to the extent some of the testimony related to transactions between Brandon Hankins and Manjate prior to the charged conspiracies, this represented legitimate background evidence, admissible to explain the source of their relationship as it continued during the periods of the charged conspiracies. The evidence was properly admitted as *res gestae* evidence, i.e., evidence of "other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). It represented background evidence having a "causal, temporal or spatial connection with the charged offense" and helped define the scope of the charged conspiracies. *Mayberry*, 540 F.3d at 514 (quoting *Hardy*, 228 F.3d at 748). Manjate's convictions can hardly be deemed invalid merely because the prosecutor failed to charge other crimes which could have been proven by the evidence presented. *Id.*

Although Manjate argues that the jury's consideration of evidence of activities outside the charged conspiracies resulted in unfair prejudice, he has failed to specifically identify what the unfair prejudice is. He has failed to demonstrate that any variance undermined the purposes of the indictment. He has not demonstrated that any of the evidence was admitted in clear error, and has shown neither that his substantial rights were affected nor that "the fairness, integrity or public reputation" of the trial was seriously impugned. Manjate has not made the requisite showing of plain error.

### IV. Prosecutorial Misconduct (Manjate)

Manjate also contends he was denied his right to a fair trial because the prosecuting attorney attempted to impeach him on cross-examination by reference to a 2000 misdemeanor conviction, in direct violation of an express ruling by the district court. Again, because this objection was not made in the form of a motion for mistrial or other relief that was denied by the district court, we review for plain error. *United States v. Rose*, 522 F.3d 710, 716 (6th Cir. 2008). Prosecutorial misconduct—not merely some error by the prosecutor, but *misconduct*—warrants relief only if it was flagrant and is shown to have resulted in prejudice. *Id.*; *United States v. Coker*, 514 F.3d 562, 568 (6th Cir. 2008).

Here, Manjate has shown no more than mere error, hardly flagrant in nature, and has not demonstrated prejudice. Yes, prior to cross-examination, the district court had expressly ruled that the federal prosecutor, the Assistant U.S. Attorney, was prohibited from inquiring into Manjate's 2000 misdemeanor conviction for possession of marijuana. The court ruled that the probative value of the evidence was clearly outweighed by danger of unfair prejudice. Yes, on cross-examination, the AUSA asked a question of Manjate which elicited, whether deliberately or inadvertently, an answer that contravened the court's limine ruling. Specifically, he asked, "Did you ever have any drugs in your car ever?" Defense counsel did not object to the question. Manjate answered, "In 2000, I had an incident where it was a misdemeanor." Even then, defense counsel did not object. Rather, it was the AUSA who, in a sidebar conference, proposed that Manjate, through his answer, had opened the door to use of the misdemeanor conviction for impeachment purposes. Defense

counsel objected and asked the court to enforce its limine ruling by prohibiting any further questioning relating to the 2000 incident. The court agreed, offering to strike Manjate's answer from the record. Defense counsel declined the offer, preferring not to bring any more attention to the matter. Trial tr. pp. 1381-83, JA 1664-66.

On its face, there is nothing improper in the AUSA's questioning. Manjate could have answered the question truthfully without mentioning the misdemeanor conviction. We can thus hardly rule that the AUSA engaged in misconduct. Yet, even if he deliberately baited Manjate into disclosing the protected information, it was Manjate who volunteered it. The court and counsel then worked cooperatively to isolate the solitary remark and limit any damage. Hence, even if Manjate has identified an instance of prosecutorial misconduct, it can hardly be characterized as flagrant. Nor has it been shown to have resulted in such unfair prejudice as to affect Manjate's substantial rights and deprive him of a fair trial. Again, Manjate has failed to show plain error.

### V. Acceptance of Responsibility (Lewis)

Defendant Lewis contends the district court erred in its calculation of the appropriate advisory Sentencing Guidelines range by refusing to give him credit for acceptance of responsibility for his wrongdoing. U.S.S.G. § 3E1.1(a). He contends his admission of guilt in relation to seven of the charged offenses is clear evidence of his acceptance of responsibility. Yet, Lewis did not ask for acceptance-of-responsibility credit in the district court and did not object to the presentence report recommendation that no credit be given. Lewis did object to the court's obstruction-of-justice

enhancement, but the objection was overruled because the district court found by a preponderance of the evidence that Lewis testified falsely that he was not involved in a conspiracy with Manjate.

Ordinarily, we review the district court's acceptance-of-responsibility determination, presenting a factual inquiry, only for clear error. *United States v. Brown*, 367 F.3d 549, 556 (6th Cir. 2004). Even when the determination is based on uncontested facts, the district court's decision is reviewed with deference, not de novo. *Id.* Here, however, inasmuch as Lewis did not even ask for an acceptance-of-responsibility reduction, we review for plain error and may grant relief only on a showing that the error was so plain and obvious that the district court was derelict in not correcting it *sua sponte*.

Lewis's position amounts to the argument that because he admitted guilt to some of the charged offenses, he is entitled to credit for acceptance of responsibility as a matter of law, even though he was found to have testified falsely regarding other counts. Lewis is plainly wrong. Conduct resulting in an obstruction-of-justice enhancement under U.S.S.G. § 3C1.1 is ordinarily deemed to indicate a failure to accept responsibility. *United States v. Jeross*, 521 F.3d 562, 581 (6th Cir. 2008). However, there may be extraordinary circumstances in which both an obstruction of justice enhancement and an acceptance of responsibility reduction may apply. *Id*. Where obstruction of justice has occurred, defendant has the burden of proving the extraordinary nature of his case.

Lewis has not carried this burden. Quite to the contrary, the facts show that Lewis's obstructive conduct, perjury, as found by the district court, continued during trial even after he had admitted his guilt in relation to some of the charges. Under such circumstances, credit for

acceptance of responsibility is consistently denied. *See id.* at 582; *United States v. Angel*, 355 F.3d 462, 478 (6th Cir. 2004). Accordingly, we reject Lewis's claim that the district court's denial of credit for acceptance of responsibility was plain error.

## VI. Drug Quantity Calculations (Manjate)

Defendant Manjate challenges the district court's findings regarding the quantities of heroin and cocaine he was responsible for. He contends essentially that the court erred by relying on the uncontested presentence report estimates that he was responsible for distributing 559.75 grams of heroin and 1.7 kilograms of cocaine. Manjate acknowledges that these estimates were based largely on trial testimony, but contends it was error for the court to adopt estimates consisting of "rough guesses" from witnesses whose credibility was questionable. He acknowledges that because no objection was asserted below, this matter, too, is reviewed only for plain error. *See United States v. Treadway*, 328 F.3d 878, 883 (6th Cir. 2003). In fact, not only did Manjate refrain from asserting any objection to drug quantities at sentencing, but his attorney affirmatively waived objection, saying, "I don't believe the quantity is an issue." Sent. tr. p. 3, JA 1860.

Clearly, the district court's reliance on quantity approximations was not inappropriate. *United States v. Hernandez*, 227 F.3d 686, 699 (6th Cir. 2000). Estimates suffice as long as they are supported by a preponderance of the evidence. *Jeross,* 521 F.3d at 570. Testimonial evidence from other coconspirators may be a reliable and sufficient basis for drug quantity determinations. *Id.* The district court's credibility determinations are entitled to great deference. *Id.* We are thus in no position to second-guess the district court's assessment of these matters—much less find plain

error—where defendant Manjate (a) declined to even meet with the probation officer who prepared

the presentence report, (b) failed to object and even waived his right to object to the estimated drug

quantities at sentencing, and (c) has failed to identify any evidence that refutes the evidence relied

on by the district court in adopting the uncontested quantities proposed in the presentence report.

Manjate's untimely and unsupported drug quantity objection is therefore overruled.

**VII. Reasonableness of Sentences (Manjate and Lewis)**

Both defendants challenge their sentences as unreasonable. We review the district court's

sentencing judgments under the deferential "abuse of discretion" standard, evaluating both their

procedural and substantive reasonableness. *Gall v. United States*, —U.S.—, 128 S.Ct. 586, 591, 598

(2007). A district court will be deemed to have abused its discretion if it committed significant

procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range,

treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting

a sentence based on clearly erroneous facts, or failing to adequately explain the chosen

sentence—including an explanation for any deviation from the Guidelines range." *Id.* at 597. The

standard for evaluating whether a sentence is substantively unreasonable is summarized in *Gall* as

follows:

> When conducting this review, the court will, of course, take into account the totality
> of the circumstances, including the extent of any variance from the Guidelines range.
> If the sentence is within the Guidelines range, the appellate court may, but is not
> required to, apply a presumption of reasonableness. [*Rita v. United States,* 551 U.S.
> 338, 127 S.Ct. 2456, 2462-68, 168 L.Ed.2d 203 (2007)]. But if the sentence is
> outside the Guidelines range, the court may not apply a presumption of
> unreasonableness. It may consider the extent of the deviation, but must give due
> deference to the district court's decision that the § 3553(a) factors, on a whole, justify

> the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

*Gall*, 128 S.Ct. at 597. In the Sixth Circuit, we accord a rebuttable presumption of reasonableness to sentences within the properly calculated Guidelines range. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008).

## A. *Lewis's Sentence*

Defendant Lewis was sentenced to 420 months in prison. He contends the sentence is procedurally unreasonable because the district court did not properly consider the § 3553(a) factors. He contends the sentence is substantively unreasonable because it is greater than necessary to comply with the purposes of sentencing. Both arguments ignore the fact that the district court imposed the shortest term of imprisonment that it could within its lawful discretion, 35 years, the very sentence which Lewis's counsel asked the court to impose at sentencing. The district court duly calculated the applicable Guidelines range to be 78 to 97 months. Based on the crimes of conviction, however, the court had no authority to impose a sentence below the applicable statutory mandatory sentencing minimums, because the exceptions recognized at 18 U.S.C. § 3553(e) and (f) do not apply. *See United States v. Branch*, 537 F.3d 582, 594-95 (6th Cir. 2008); *United States v. Franklin*, 499 F.3d 578, 585-86 (6th Cir. 2007); *United States v. Burke*, 237 F.3d 741, 744 (6th Cir. 2001). The resulting sentence is undeniably long, but this is a product of legislative judgment, not judicial discretion.

**B.** *Manjate's Sentence*

Defendant Manjate received a prison sentence of 224 months. He contends the sentence is procedurally unreasonable because the district court improperly calculated the applicable advisory Guidelines range to be 188 to 235 months based on erroneous drug quantity determinations. As explained above, Manjate has failed to demonstrate any error in the district court's drug quantity determinations. It follows that his procedural unreasonableness challenge is meritless.

Manjate also contends his sentence is substantively unreasonable because the district court, in considering the § 3553(a) factors, placed inordinate weight on his lack of remorse and on the social ills that flow from the illegal drug trade generally. Manjate maintains that a prison sentence at the low end of the applicable advisory Guidelines range, rather than in the upper half, would, in the words of the parsimony clause, 18 U.S.C. § 3553(a), be "sufficient, but not greater than necessary" to comply with the purposes of sentencing.

Manjate's sentence is within the properly calculated advisory Guidelines range and is therefore subject to a rebuttable presumption of reasonableness. *Vonner*, 516 F.3d at 389. This presumption is not rebutted by a defendant's mere argument that a shorter prison sentence would be sufficient. *United States v. Ward*, 506 F.3d 468, 478-79 (6th Cir. 2007); *United States v. Dexta*, 470 F.3d 612, 616 (6th Cir. 2006). Nor are we persuaded, upon review of the sentencing record, that the district court improperly weighed such factors as Manjate's lack of remorse and the destructive consequences of drug trafficking on individual lives, families, and whole communities. Such considerations come squarely within the ambit of such § 3553(a) factors as "the nature and

circumstances of the offense and the history and characteristics of the defendant;" as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." Accordingly, we reject Manjate's substantive unreasonableness challenge.

## VIII. Conclusion

For the reasons stated above, we find no merit in any of defendants' claims of error. Their convictions and sentences are therefore **AFFIRMED**.